IGNATIUS FROELICH v. TOLEDO & OHIO CENTRAL RAILWAY CO.

1. SECTION 3365–22 REV. STAT., THE RAILWAY FELLOW SERVANT LAW, CONSTITUTIONAL.

Section 3365–22 Rev. Stat., which provides that any employe of a railway company having power to direct or control another is not the fellow-servant of an employe having no such power, where they are in different branches or departments, is not in conflict with the Ohio constitution, as granting special privileges or not having a uniform operation throughout the state, or with the United States constitution as denying to any person the equal protection of the laws.

2. STATUTE OPERATING REASONABLY AND UNIFORMLY UPON ALL RAILROADS OF THE STATE, CONSTITUTIONAL.

A statute which applies to railway companies and not to other corporations is constitutional and has a uniform operation throughout the state where such

statute has a uniform operation upon all the railways within the state and reasonable grounds exist for making such a provision with respect to railway companies which do not exist as to other corporations.

3. SAME—REASONABLE APPLICATION TO PARTICULAR CLASS OF EMPLOYES.

A statute which applies only to a particular class of railway employes is not in violation of Sec. 2, Art. 1 of the Ohio constitution, or Sec. 1 of the fourteenth amendment to the United States constitution, where the classification of employes for which it provides, although somewhat arbitrary, is reasonable and made with a reasonable and proper purpose.

4. ENGINEER AND HOOKER OF COALING MACHINE ARE IN SAME DEPARTMENT.

The engineer of a "coal tipple" who controls the machinery which dumps cars loaded with coal into buckets standing upon cars beside such machine, and also moves such cars upon their track, is in the same "department" with a "hooker," whose duty it is to hook and unhook the hoisting tackle by means of which such buckets are raised from the cars and dumped into boats, within the meaning of Sec. 3365-22 Rev. Stat., and such engineer having no authority or control over such "hooker" they are fellow-servants.

HEARD ON ERROR.

D. L. Beale and Charles A. Thatcher, for plaintiff in error.

Doyle & Lewis and J. W. Shauffelberger, for defendant in error.

HULL, J.

The plaintiff in error was the plaintiff below, and brought his action to recover damages against the Toledo & Ohio Central Railway Company for injuries which he claims he sustained on account of the negligence of the railway company through an employe superior to the plaintiff. Froelich, claiming that he was an employe without any power to control or direct any other employe; that the employe through whose negligence he was injured, to-wit, an engineer, was in control of and had charge over another employe and was in another branch or department of the service from Froelich, and that, therefore, the railway company was liable under the last clause of Sec. 3365-22 Rev. Stat. (87 O. L. 149), which statute reads as follows:

"That in all actions against the railroad company for personal injury to, or death resulting from personal injury, of any person, while in the employ of such company, arising from the negligence of such company or any of its officers or employes, it shall be held in addition to the liability now existing by law, that every person in the employ of such company, actually having power or authority to direct or control any other employe of such company, is not the fellow-servant, but superior of such other employe, also that every person in the employ of such company having charge or control of employes in any separate branch or department, shall be held to be the superior and not fellow-servant of employes in any other branch or department who have no power to direct or control in the branch or department in which they are employed."

The plaintiff claims to be within the last clause: "Also that every

Froelich v. Railway Co.

person in the employ of such company having charge or control of employes in any separate branch or department," etc.

The plaintiff and the engineer, with other men, were engaged in operating a "Brown hoisting" apparatus, in unloading coal from cars into a vessel. After the testimony of both plaintiff and defendant had been heard at the trial in the court below, the court, upon motion of defendant, instructed the jury to return a verdict in favor of the defendant, upon the sole ground, as shown by the opinion of the court (13 Dec. 110), that the clause of this section under which the plaintiff claimed is unconstitutional — in violation of the constitution of the United States and of the state of Ohio, the court holding that, but for this, the plaintiff would have been entitled to have his case go to the jury, holding that there was evidence tending to show negligence on the part of the defendant, and that whether the plaintiff was guilty of contributory negligence was a disputed question of fact, and holding that Froelich was in a separate branch or department of service from the engineer, on account of whose negligence he claimed to have been injured. The constitutional questions were argued at length and ably in this court, and the first question for consideration is, whether this clause of the statute is in conflict with any of the provisions of the constitution of this state or of the United States.

It is claimed by defendant in error that it is in conflict with Sec. 1 of the fourteenth amendment of the constitution of the United States and in conflict with Sec. 2, Art. 1, of the constitution of Ohio, being a portion of the bill of rights, and with Sec. 26, Art. 2, of the constitution of this state. The claim, in substance, is that this is class legislation— special legislation, made applicable without sufficient reason, to a particular class—to railroad companies alone—and to a particular class of railroad employes.

The last clause of Sec. 1, of the fourteenth amendment to the constitution of the United States, is as follows:

"Nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdicion the equal protection of the laws."

Section 2, Art. 1, of the state constitution provides: "All political power is inherent in the people. Government is instituted for their equal protection and benefit," etc. And Sec. 26, Art. 2, provides: "All laws, of a general nature, shall have a uniform operation throughout the state," etc. These provisions and the claims under them made by counsel, may be considered somewhat together.

It is claimed that this whole statute, applying as it does to railroad companies alone, is in conflict with the provisions of Sec. 26, Art. 2, of

the state constitution, which provides that : "All laws of a general nature, shall have a uniform operation throughout the state;" that inasmuch as this statute operates upon railroad companies, and upon railroad companies only, it violates this provision of the constitution.

The statute, however, operates upon all of the railroads of the state, operating uniformly on all corporations of that kind, and if there are reasonable grounds for making a provision of this kind with respect to railroad companies that does not exist with respect to other companies or corporations, then, as we understand the law, this statute would not be in conflict with this provision of the constitution, although it applies to railroads alone, and would be held to have, in the language of the constitution, " a uniform operation." It is not necessary to say, it goes without saying, that there are many things in the operation of a railroad that are not found in the operation of other companies or corporations, or in the operations of private individuals engaged in other business. A railroad company operates its property, not only for its own profit, but for the benefit and advantage of the public—for all who desire to travel over its roads. By their charters railroads are given certain advantages and privileges that are not given to other corporations in the state. They have the power, among others of *eminent domain*—the power to appropriate property for their uses and purposes. The public is interested in the proper and safe conduct of their affairs; interested in the care, diligence and prudence with which their men perform their duties, as the public is interested in being carried safely and in having their goods and wares carried safely over the railroads, and it has been expressly held by a United States court that this statute as a whole is not inimical to this provision of the constitution of the state. In Peirce v. Van Dusen, 9 O. F. D. 419 [78 Fed. Rep. 693; 24 C. C. A. 280; 47 U. S. App. 339], this statute came before the circuit court of appeals of the United States. The opinion was delivered by Justice Harlan. The third paragraph of the syllabus reads as follows:

"The act of April 2, 1890 (87 O. L. 149), providing for the protection and relief of railroad employes, etc., is not repugnant to the provisions of the constitution of Ohio declaring that ' all laws of a general nature shall have uniform operation throughout the state, but applies to all railroad corporations operating railroads within the state, and is within the meaning of the state constitution, general in its nature, and as it applies to all of a given class of railroad employes, it operates uniformly throughout the state, and is therefore constitutional and valid."

Justice Harlan says, in delivering the opinion of the court, on page 432, after discussing the question very fully:

"We do not deem it necessary to pursue this subject further. We think it clear that the Ohio statute is not obnoxious to the constitutional provision requiring all laws of a general nature to have a uniform operation throughout the state. As it applies to all railroad corporations operating railroads within the state, it is, within the meaning of the state constitution, general in its nature; and, as it applies to all of a given class of railroad employes, it operates uniformly throughout the state."

The facts in this case, however, were such that the case came within the provision of the first part of the statute, and the constitutionality of the last clause was not involved.

There is no decision of the Supreme Court of this state in conflict with the doctrine here announced—in fact the question as to constitutionality of this statute has never been raised in the Supreme Court of Ohio.

In Missouri Pac. Ry. Co. v. Mackey, 127 U. S. 205 [8 S. Ct. Rep. 1161], a Kansas statute came before the court. This Kansas statute practically abrogated the doctrine of fellow-servants so far as it applies to railroad companies. The Supreme Court of the United States held, as laid down in the syllabus:

"The statute of Kansas of 1874, Chap. 93, Sec. 1, p. 143, Comp. Laws Kansas, 1881, p. 784, which provides that 'Every railroad company organized or doing business in this state shall be liable for all damages done to any employe of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers, or other employes, to any person sustaining such damage,' does not deprive a railroad company of its property without due process of law; and does not deny to it the equal protection of the laws; and is not in conflict with the fourteenth amendment to the constitution of the United States in either of these respects."

The opinion of the court was delivered by Mr. Justice Field, and on page 209, the court say:

"The objection that the law of 1874 deprives the railroad companies of the equal protection of the laws is even less tenable than the one considered. It seems to rest upon the theory that legislation which is special in its character is necessarily within the constitutional inhibition; but nothing can be further from the fact. The greater part of all legislation is special, either in the objects sought to be attained by it, or in the extent of its application. Laws for the improvement of municipalities, the opening and widening of particular streets, the introduction

of water and gas, and other arrangements for the safety and conveni-ence of their inhabitants, and laws for the irrigation and drainage of particular lands, for the construction of levees and the bridging of navigable rivers, are instances of this kind. Such legislation does not infringe upon the clause of the fourteenth amendment requiring equal protection of the laws, because it is special in its character; if in conflict at all with that clause, it must be on other grounds. And when legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws, if all persons brought under its influence are treated alike under the same conditions. A law giving to mechanics a lien on buildings constructed or repaired by them, for the amount of their work, and a law requiring railroad corporations to erect and maintain fences along their roads, separating them from land of adjoining proprietors so as to keep cattle off their tracks, are instances of this kind. Such legislation is not obnoxious to the last clause of the fourteenth amendment if all persons subject to it are treated alike under similar circumstances and conditions in respect both of the privileges conferred and the liabilities imposed."

It is contended, however, that the last clause of this statute is in violation of Sec. 1 of the fourteenth amendment of the constitution of the United States, and of Sec. 2, Art. 1, of the constitution of this state, which I have read, for the reason that it applies only to a *portion* of the employes of a railroad company; that it does not give to all of them the same right to begin an action for negligence that it does to those that are mentioned in this section. It is said that while the legislature may have the right to abrogate entirely the fellow-servant rule so far as it applies to railroad companies, that, if it does this it must abrogate it entirely; it must confer the right to begin an action for negligence of a fellow-servant of a railroad company upon all, and not upon a particular class, as is done by Sec. 3365-22 Rev. Stat. The last clause of this statute provides as follows: "*that every person in the employ of such company, having charge or control of employes in any separate branch or department, shall be held to be the superior and not fellow-servant of employes in any other branch or department who have no power to direct or control in the branch or department in which they are employed.*" So that under this provision an employe in one department who has no control over any other employe and no power to direct any other employe, may bring an action for the negligence of an employe in another branch or department who has some employe under him, or under his charge or control, while an employe who is working in the same branch or department with the one who has the right to bring the action but who has

Froelich v. Railway Co.

under his charge or control some other employe, cannot bring an action for the negligence of an employe in another branch or department although such employe may be a superior in the other branch or department—that is, may have some one under his charge or control—and so it is urged and argued that this classification of employes is arbitrary and unreasonable; that there is no just or reasonable ground for giving the one employe the right to bring his action for negligence and withholding it from the other; that such discrimination and classification is arbitrary and unreasonable and inimical to and in violation of these constitutional provisions; that if it is reasonable to confer this right upon the subordinate employe who has no one under him, it should also be conferred upon an employe who works by his side who may have some other employe under him. And the example is given of trains coming into collision, and the rights and privileges of the employes upon the same train who may be injured by the negligence of an employe upon the other train are contrasted, the brakeman upon one train having the right to maintain an action for an injury, while the engineer, who has a fireman under him, would not have a right to maintain an action for the negligence of the engineer or conductor of the other train. This classification, it is said, does not give to all of the employes the equal protection of the laws guaranteed to them by the fourteenth amendment to the federal constitution and is hostile and inimical to the principle laid down in the state bill of rights, that government is instituted for the equal protection of the people.

Classification, within certain limits, has been sustained by both the federal and the state courts. The rule seems to be that where the classification is reasonable—has some reasonable ground to sustain it—it will be upheld; but, if arbitrary and without reason, it will not be sustained by the courts, as for instance, a classification that depended upon the color of the suitor—the conferring of a right on a white man and not upon a black man, would not be sustained; or a classification, in some cases, depending upon the age of a person, and many other arbitrary classifications might be mentioned. But classifications, within certain limitations and having some reasonable ground to support them, are held valid and constitutional by the courts. The general rule is laid down in Gulf, C. & S. F. Ry. Co. v. Ellis, 165 U. S. 150 [17 S. Ct. Rep. 255], where, in the opinion of the court, delivered by Mr. Justice Brewer, on page 155, the court say:

"But it is said that it is not within the scope of the fourteenth amendment to withhold from states the power of classification, and that if the law deals alike with all of a certain class it is not obnoxious to the charge of a denial of equal protection. While, as a general proposition,

this is undeniably true (citing authorities), yet it is equally true that such classification cannot be made arbitrarily. The state may not say that all white men shall be subjected to the payment of the attorney's fees of parties successfully suing them and all black men not. It may not say that all men beyond a certain age shall be alone thus subjected, or all men possessed of a certain wealth. These are distinctions which do not furnish any proper basis for the attempted classification. That must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis."

Classification has been sustained in some cases in this state. In State v. Nelson, 52 Ohio St. 88 [39 N. E. Rep. 22 ; 26 L. R. A. 317], which refers to a statute relating exclusively to electric cars, the Supreme Court, in the syllabus, say :

"The act of the general assembly, entitled ' An act requiring persons, associations and corporations, owning or operating street cars, to provide for the well-being of employes' (90 O. L. 220), is not in conflict with Sec. 26, Art. 2, of the constitution of this state, which provides that ' All laws of a general nature shall have a uniform operation throughout the state.' Neither is it in conflict with Sec. 1 of the fourteenth amendment to the constitution of the United States."

The court say, on page 99 :

" Very few statutes apply equally to every person in the state. Some apply only to males, some to females, some to minors, some to persons of unsound mind, some to office holders and some to criminals. As pointed out by Minshall, J., in Adler v. Whitbeck, 44 Ohio St. 539, such classes are *arbitrarily* formed by the general assembly, and if the legislature has erred in not including what has been excepted from the operation of the law, it is simply an error of judgment in the exercise of its authority, and cannot be reviewed by the courts."

And on page 102 this is said :

" The appliances and construction of cars, and in fact all kinds of machinery, are continually changing, and it is within the exclusive authority of the general assembly, in the exercise of its police power, to determine, by general laws, what, if any, regulations are required for the protection of the health, safety and comfort of the operatives."

And that statute was sustained upon the ground that this was a reasonable classification, that there were reasons, which appeared sufficient to the legislature, to require screens to be put on this kind of cars which did not apply to other kinds of cars.

In State v. Gardner, 58 Ohio St. 599 [51 N. E. Rep. 136; 41 L. R. A. 689; 65 Am. St. Rep. 785], the Supreme Court considered the

Froelich v. Railway Co.

"Plumber's statute," so called, which required plumbers to procure licenses before transacting business, but exempted members of a firm if one member of the firm procured a license, and the statute was held to be unconstitutional. The court say, on page 610, through Judge Spear delivering the opinion :

"Our bill of rights prohibits the granting of privileges to one which are denied to others of the same class, and the imposition of restrictions or burdens upon certain citizens from which others of the same class are exempt, and Sec. 26, Art. 2, of the constitution requires that all laws of a general nature shall have a uniform operation throughout the state. A statute, therefore, which imposes special restrictions or burdens, or grants special privileges to persons engaged in the same business under the same circumstances, cannot be sustained, because it is in contravention of the equal right which all are entitled to in the enforcement of laws and in the enjoyment of liberty, and in the enjoyment of an equal right in the acquisition and possession of property, and so is not of uniform operation."

It will be observed that the Supreme Court say that a statute which imposes special restrictions and burdens, or grants special privileges to persons engaged in the same business, *under the same circumstances*, can not be sustained, there being no good or valid reason for any discrimination or classification between individuals who are engaged in the same business under the same circumstances. Other decisions of the Supreme Court of the United States which bear upon this question are found in Barbier v. Connolly, 113 U. S. 27 [5 S. Ct. Rep. 357] ; Missouri Pac. Ry. Co. v. Humes, 115 U. S. 512 [6 S. Ct. Rep. 110] ; and Pacific Express Co. v. Seibert, 142 U. S. 339 [12 S. Ct. Rep. 250].

The doctrine of Missouri Pac. Ry. Co. v. Mackey, *supra,* was reaffirmed by the Supreme Court in an opinion delivered by Chief Justice Fuller in Chicago, K. & W. Ry. Co. v. Pontius, 157 U. S. 209 [15 S. Ct. Rep. 585]. The classification of railroad employes to some extent, the division of them into departments and branches, has been recognized by the courts of many of the states. A discussion of this question is found in 12 Am. & Eng. Enc. Law (2 ed.), 971. In the chapter on fellow-servants the author says :

"In addition to the liability for the negligence of a servant charged with the performance of the master's positive duties to his servants, there has been laid upon the master, by some courts, a further liability for the negligence of a servant engaged in a department of the same general business which is separate and distinct from the department in which the injured servant is employed.

"This rule may be stated as follows: Where a servant is employed

in a department of the general service which is separate and distinct from that of the servant or servants whose negligence caused the injury, the fellow-servant rule has no application, and the master is liable."

To support this, a large number of cases are cited in a foot note. This classification differs from the classification under this statute in this, that it makes no distinction upon the ground that the servant has or has not other employes under him, as this clause of our statute does. The author says, on page 972:

"The different department limitation, or the doctrine of consociation, seems to be founded entirely upon the fact that servants in different departments of a large industrial enterprise are unable to exercise any influence upon each other in the encouragement of caution, and, the supposed reason for the rule failing, the courts refuse to apply the fellow-servant rule."

On page 978 is this:

"The constitutionality of statutes abrogating the fellow-servant rule with respect to railroad companies has been frequently contested on the ground that such statutes constitute special or class legislation. But these acts have been invariably upheld. It is authoritatively settled that such legislation is not obnoxious to the fourteenth amendment to the United States constitution as depriving railroads of property without due process of law, or as denying to them the equal protection of the laws."

In a very recent case decided by the Supreme Court of the United States, the question of classification as applied to inheritance taxes was discussed in Billings v. Illinois, 23 S. Ct. Rep. 272, 273. The decision was rendered on January 19, 1903. The syllabus says:

"The equal protection of the laws is not denied by the Illinois inheritance tax law because, under that statute, as interpreted and enforced by the state courts, certain life estates may be taxed when the remainder is to lineal descendants of the decedent, but not when the remainder is to collateral heirs or strangers in blood."

In the opinion, delivered by Mr. Justice McKenna, there is quite a full discussion of the doctrine of classification. The court say:

"We said (Wagoun v. Illinois Tr. & Sav. Bk., 170 U. S. 283 [18 S. Ct. Rep. 594]) it was established by cases that classification must be based on some reasonable ground. It could not be a 'mere arbitrary selection.' But what is the test of an arbitrary selection? It is difficult to exhibit it precisely in a general rule. Classification is essentially the same in law as it is in other departments of knowledge or practice. It is the grouping of things in speculation or practice because they 'agree with one another in certain particulars and differ from other things in those same particulars.' Things may have very diverse qual-

Froelich v. Railway Co.

ities, and yet be united in a class. They may have very similar qualities, and yet be cast in different classes. Cattle and horses may be considered in a class for some purposes. Their differences are certainly pronounced. Salt and sugar may be associated in a grocer's stock for a grocer's purposes. To confound them its use would be very disappointing. Human beings are essentially alike, yet some individuals may have attributes or relations not possessed by others, which may constitute them a class. But their classification—indeed, all classification—must primarily depend upon purpose—the problem presented. Science will have one purpose, business another, and legislation still another. The latter, of course, on account of the restraints upon the legislature, may not be legal—may not be within the power of the legislature: To dispute that power, however, is not the same thing as to dispute a classification, and yet that there may be dependence—more freedom of classification in some instances—has been indicated by the cases. A state cannot regulate interstate commerce, however accurate its classification of objects may be. On the other hand, the taxing power of a state is one of its most extensive powers. It cannot be exercised upon persons grouped according to their complexions. It can be exercised if they are grouped according to their occupations. A state may regulate or suppress combinations to restrict the sale of products. The power cannot be exercised to forbid combinations among those who buy products, and permit combinations among those who raise or grow products. * * * And yet, exercising its taxing power, it has been decided, that a state may make that discrimination. * * * Other illustrations may be taken from the cases which tend to the same end. If the purpose is within the legal powers of the legislature, and the classification made has relation to that purpose (excludes no persons or objects that are affected by the purpose, includes all that are), logically speaking, it will be appropriate ; legally speaking, a law based upon it will have equality of operation. And, excluding our right to consider policies or assume legislation, we have many times said that a state in its purposes and in the execution of them must be allowed a wide range of discretion, and that this court will not make itself a harbor in which can be found ' a refuge from ill-advised, unequal and oppressive ' legislation."

It appears from these authorities, and others that might be cited, that, if the classification is reasonable, if it is in line with a reasonable and proper purpose, that such legislation will not be disturbed by the courts, although the classification may be somewhat arbitrary. There are many laws which appear to work an arbitrary classification. For example, the mechanics' lien law, as suggested by the Supreme Court, which permits a mechanic to have a lien for his labor which it

does not give to others; the laws relating to an appeal of cases from one court to another, depending upon the amount involved, and it would be hard to give a reason why a case involving $2,000 ought to be removed to a federal court when a similar case involving $1,999 cannot be removed. A former statute of this state restricted the right to take a case to the Supreme Court on error (except in certain cases) which did not involve $300 or more, but it would be difficult to give a reason why a case which involved $300 should be allowed to go to the Supreme Court and one that involved $295 should not go. But the legislature thought at that time that it was wise to make this difference and to draw the line somewhere, and it fixed the amount at $300, and the constitutionality of the statute was never questioned.

In the statute under consideration the legislature did not see fit to abrogate entirely the fellow-servant rule. The old common law rule that the master was not liable to a servant for the negligence of a fellow-servant, had been modified by the Supreme Court of this state by making the master liable for the negligence of those who were immediately superior to the employe who was injured. The legislature has modified the fellow-servant rule still further by giving to the common laborer who has no power over or control of other employes, a right to maintain an action against a railroad company where he is injured by the negligence of a superior servant, or one who has charge or control in another department or branch of the service although such superior servant may not have any control over him.

In considering the reasons for making the master liable for the negligence of a superior servant, to one under him, which has long been the rule in Ohio, we think some reason may be found for this discrimination or classification which the legislature made in this statute. It is not necessary that the court should agree with the legislature as to the reason for the rule, but there is a difference between the situation of an employe who is a common laborer and who has no authority or control over another employe, between him and an employe who is to some extent the superior and who has charge of or control over other employes; that there is a difference between their situation and condition, it seems to us self-evident—one has some authority delegated to him by the master; stands to some extent in the place of the master, and it is best for the servant, best for the other employes and best for the public that in the conduct of railroads, that in the selection of such employes, care should be exercised by the master, and added liability will increase the degree of care exercised. The common laborer has no one under him, has no authority over or control of others; it is his duty to do simply as he is told—to obey orders, and by this modification of the fellow-servant

rule, brought about by this statute, the right is conferred upon such common laborer who has no power to direct or control, to bring this action, and it is not conferred upon the servant who stands to some extent for the master in a place of authority.

It does not seem to us that this classification is more arbitrary than some others that have been made by legislatures and sustained by the courts, both state and federal. While the constitutionality of this statute has not been raised in the Supreme Court of this state, still judgments based upon this statute have been brought before that court (Railway Co. v. Margrat, 51 Ohio St. 130 [37 N. E. Rep. 11], and Railway Co. v. Erick, 51 Ohio St. 146 [37 N. E. Rep. 128] ), and both of those judgments affirmed by the Supreme Court, and the constitutionality of the statute was not questioned. And while, as I have said, the constitutional question was not raised, yet the fact that the Supreme Court affirmed the judgments that would have had no validity but for the statute, and in Railway Co. v. Margrat, *supra*, but for the last clause of the statute now under discussion, and it did not occur to the court that any part of the statute was unconstitutional, is significant and is entitled to consideration. I cite also Hill v. Railway Co., 12 Circ. Dec. 241 (22 R. 291), decided by this court. The opinion was delivered by Judge Parker, and contains a full discussion of this statute and the reasons for it and a citation of numerous authorities from this and other states. The constitutionality of the act was not questioned or discussed in this case.

We hold that this statute is not in conflict with any constitutional provision, either state or national; that the passage of it was within the constitutional power of the legislature, and it is, therefore, a valid statute. I have referred to some of the reasons that may have operated upon the legislative mind in the enactment of this statute; but it does not devolve upon this court, in passing upon the statute, to determine what moved the legislature to pass it or to give the exact reasons that may have led to its passage. The legislature is the law-making body of the state, and if a statute is not clearly in conflict with some provision of the constitution, it cannot be set aside by courts, although they may differ from the legislature as to the policy of the law and although it may seem arbitrary in some of its provisions.

Holding, as we do, that the statute is constitutional, there still remains the question as to whether the court, under the facts, was justified in directing a verdict for defendant. In view of our conclusion as hereafter stated, upon this question, we might have decided the case without passing upon the constitutionality of the statute, but as we were informed by counsel that other cases involving the same question were pending in this county, in the common pleas court, we thought best to

announce our conclusion. The question had been decided both ways in different common pleas courts of the state, the trial court in this case (Froelich v. Railway Co., 13 Dec. 107, 110) and the common pleas of Ashtabula county (Maltby v. Railway Co., 13 Dec. 280) holding the act unconstitutional, while the common pleas court of Huron county (Roe v. Railway Co., 13 Dec. 260) held it constitutional.

The court below held that Froelich and the engineer, Stewart, through whose negligence he claims to have been injured, were in different branches or departments of service, and that, therefore, Froelich came within the terms of the statute. Froelich was employed by the railroad company upon a coal dock in the city of Toledo, and with others operated a " Brown hoisting " machine in the loading of coal from cars into boats. There was an upper tipple-house in which there was an engineer working, who controlled the machinery by means of levers; and there was another tipple-house or apartment, below, where there was stationed an engineer or fireman—witnesses differed as to what he should be called. The cars loaded with coal were tipped over and emptied into large buckets by means of the machinery. The buckets were on cars or carriages, of which there were three, connected together by irons, the carriages being about twelve feet apart. There were six buckets to each car, each one holding several tons of coal, the buckets extending entirely across the cars, which were flat cars. The machinery which moved the cars on which the buckets stood was operated by the engineer above and the cars or carriages were moved up or down the river as it became necessary in loading the vessel. The plaintiff, Froelich, was one of the " hookers," whose duty it was to hook and unhook the large hooks which were fastened into these buckets for the purpose of lifting them off the cars and unloading them into the hold of the vessel. This was done by power furnished by another engine. On the occasion of the injury, which occurred early in the morning, about daylight, plaintiff had hooked the hooks onto the buckets, the carriage having been unloaded, and it was necessary in the performance of his duty for him to go to the other side of the tipple-house. Instead of walking around, he attempted to jump onto the platform of the car just in front of the buckets, and as he was about to get onto the carriage, he claims that the engineer in the tipple-house negligently threw on the power and started the carriage in motion and he was thrown off and crushed between the bucket and the lower part of the tipple-house and quite seriously injured.

It is claimed that Froelich and this engineer were in separate departments of the service, and, therefore, that this case is within the statute. There was over all the men a superintendent, a Mr. Dewey, and over

each gang a foreman. The foreman over this gang was a man named Roe, and in charge of the machinery and the engines and the derricks on the docks, to see that they were kept in repair, was a chief engineer by the name of Whistler. The question is, whether Froelich, under these circumstances, was in a separate department or branch of the service from the engineer.

In the case of Railway Co. v. Margrat, 51 Ohio St. 130 [37 N. E. Rep. 11], the Supreme Court has construed, to some extent, this statute. The court say, through Judge Bradbury delivering the opinion, on pages 144 and 145:

"The section, however, makes no attempt to define the terms, 'department,' and 'branches;' but these terms should not be limited so as to embrace, merely, those large divisions, created for convenience in administering the affairs of the company. On the contrary, it is more reasonable to suppose that they relate to those minute ones which concern the daily duties of the employes. Those terms are general and comprehensive; but as the legislature discloses no purpose, in this connection to regulate the internal affairs of a railway company, it should not be presumed to refer to divisions of its business made for its own ends; and if not to such divisions, what divisions could it mean but those which divide up the employes while in actual service. The section expressly declares a purpose to enlarge the remedy of the employes for accidents occurring in the course of their employment. This declaration emphasizes the presumption that the terms under consideration should be construed as referring to conditions affecting them, rather than to those which are established by the company for its own purposes.

Without pursuing the matter further, we hold that, under the section of the statute under consideration, an engineer on one train is in a separate branch of the company's service from that of a brakeman of another train belonging to the same company."

It was held by this court, in the Huron county case, heretofore cited, Hill v. Railway Co., 12 Circ. Dec. 241 (22 R. 291), that a brakeman and an engineer, upon the same train, are within the same branch or department of service; as was said in the syllabus:

"An engineer and a brakeman being upon the same train in the promotion of a single object, such as the moving of the train, and associated together in such a way in that enterprise that they would naturally be careful of the train and therefore careful of one another, are in a single department, and not in separate departments, within the meaning of Sec. 3365-22 Rev. Stat. (97 O. L. 149), providing that every person in the employ of a railroad company 'having charge or control of employes in any separate branch or department, shall be held to be the

superior and not the fellow-servant of employes in any other branch or department.'" * * *

Were Froelich and this engineer situated any differently, so far as this statute is concerned, from a brakeman and an engineer on the same train? One of the reasons for the granting of this right to sue under this statute is that employes in different branches of the service are so situated they are not working together for the same common purpose and are not so situated that they can exercise care towards each other. But where they are engaged in the same branch of service, although in different capacities, this reason does not exist. In this case, there was an engineer and a man under him, in the lower part of a tipple-house, and men who assisted in the dumping of the cars and other men engaged in unloading the coal into the boats, and men in other capacities about the machine, all engaged in one common service—the employment of unloading coal into boats at the dock, by means of the machinery. The labor of Froelich was necessary in the carrying on of this work; the labor of the engineer in the upper tipple-house, where he was manipulating the machinery by means of levers, was necessary also in the carrying on of the work. At the time Froelich was injured he was riding on a car moved by the machinery under the control of the engineer, and it was by his negligence in starting the car before the plaintiff had time to get firmly on that, it was claimed, he was injured, but the duties of Froelich and of the engineer, Stewart, were not such—as was said by the Supreme Court in Railway Co. v. Margrat, *supra*—as divided or separated them from each other in their employment, but they were both, along with the other men, employed about this hoisting machine, engaged in one common service, as it seems to us, the same as a brakeman and an engineer employed upon the same railroad train; both performing duties in relation to the train and its movements and control, but not engaged in such a service or operation as divides them or separate them into different departments or branches.

This being our view of the case, it seems to us that the engineer, Stewart, whose negligence is complained of, and Froelich, were not in separate branches or departments at the time of Froelich's injury, and that, therefore, his case does not come within the statute under consideration. It devolves upon the plaintiff who brings an action under this statute to show by the evidence that he is within the provisions of the statute. This statute is a modification of the fellow-servant rule, which prevailed before its passage, and, in order to entitle him to recover, he must show by the evidence that he is within the provisions of the act. We think the evidence fails to do this; but, on the contrary, shows that plaintiff and the engineer were in the same branch or department

ot the service. Therefore, while we disagree with the court below as to the grounds upon which its action was based in taking the case from the jury, we hold that the action of the court in that respect was right, for the reasons stated, and therefore, that there was no error in directing a verdict for the defendant.

Holding as we do, that Froelich and the engineer, Stewart, were not in different branches or departments, it is not necessary for us to discuss the questions of negligence which were argued before us. The judg-...ent of the court of common pleas will be affirmed.