## PACIFIC ·EXPRESS COMPANY *v.* SEIBERT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE WESTERN DISTRICT OF MISSOURI.

No. 983. Submitted November 9, 1891. — Decided January 4, 1892.

A bill in equity which alleges (1) that a statute of a State imposes a tax
upon interstate commerce, and is therefore void as forbidden by the
Constitution of the United States, and which sets out the provision
complained of from which it appears that the tax was imposed only on
business done within the State, (2) that the act denies to the complainant
the equal protection of the laws of the State, and is therefore void by
reason of violating the Fourteenth Amendment; and (3) that the act is
not uniform and equal in its operation, and is void by reason of repug-
nance to the constitution of the State; and which seeks on these grounds
an injunction against the collection of the tax, presents no ground justi-
fying the interposition of a court of equity to enjoin the collection of the
tax.

The act of the legislature of Missouri of May 16, 1889, " to define express
companies, and to prescribe the mode of taxing the same, and to fix the
rate of taxation thereon," imposes a tax only on business done within
the State, and does not violate the requirements of uniformity and
equality of taxation prescribed by the constitution of the State of
Missouri.

Diversity of taxation, both with respect to the amount imposed and the
various species of property selected, either for bearing its burdens or
for being exempt from them, is not inconsistent with a perfect uni-
formity and equality in taxation, and of a just adaptation of property to
its burdens.

A system of taxation which imposes the same tax upon every species of
property, irrespective of its nature, or condition, or class, will be de-
structive of the principle of uniformity and equality in taxation, and of
a just adaptation of property to its burdens.

A state statute which defines an express company to be persons and cor-
porations who carry on the business of transportation on contracts for
hire with railroad or steamboat companies, does not invidiously discrim-
inate against the express companies defined by it, and in favor of other
companies or persons carrying express matter on other conditions, or
under different circumstances.

THE court stated the case as follows:

This was a suit in equity by the Pacific Express Company,
a Nebraska corporation, against John M. Seibert, state auditor,

and John M. Wood, attorney general, of the State of Missouri, to restrain and enjoin the collection of certain alleged illegal taxes assessed against the company under the provisions of an act of the Missouri legislature, which was claimed to be in conflict with the constitution of Missouri and the Constitution of the United States.

The act in question, approved May 16, 1889, is as follows:

"SECTION 1. Any person, persons, joint-stock association, company or corporation incorporated under the laws of any State, Territory or country conveying to, from or through this State or any part thereof, money, packages, gold, silver, plate, articles, goods, merchandise or effects of any kind by express on contract with any railroad or steamboat company or the managers, lessees, agents or receivers thereof (not including railroad companies or steamboats engaged in the ordinary transportation of merchandise and property in this State) shall be deemed to be an express company.

"SEC. 2. Every such express company shall annually, between the first day of April and the first day of May, make and deliver to the state auditor a statement, verified by the oath of the officer or agent making such report, showing the entire receipts for business done within this State of each agent of such company doing business in this State for the year then next preceding the first day of April for and on account of such company, including its proportion of gross receipts for business done by such company in connection with other companies: Provided, that the amount which any express company actually pays to the railroads or steamboats within this State for the transportation of their freight within this State may be deducted from the gross receipts of such company as above ascertained; and provided further, that said amount paid to the various railroad or steamboat companies for transportation shall be itemized, showing the amount paid to each railroad or steamboat company; and provided further, that nothing herein contained shall release such express companies from the assessment and taxation of their tangible property in the manner that other tangible property is assessed and taxed. Such company making statement of such receipts shall include as such

all sums earned or charged for the business done within this State for such preceding year, whether actually received or not. Such statement shall contain an abstract of the amount received in each county and the total amount received for all the counties. In case of the failure or refusal of such express company to make such statement before the first day of May it shall then be the duty of each local agent of such express company within this State annually, between the first day of May and the first day of June, to make out and forward to the state auditor a similar verified statement of the gross receipts of his agency for the year then next preceding the first day of April. When such statement is made such express company shall at the time of making the same pay into the treasury of the State the sum of two dollars on each one hundred dollars of such receipts; and any such express company failing or refusing for more than thirty days after the first day of June in each year to render an accurate account of its receipts in the manner above provided and to pay the required tax thereon shall forfeit one hundred dollars for each additional day such statement and payment shall be delayed, to be recovered in an action in the name of the State of Missouri on the relation of the state auditor in any court of competent jurisdiction, and the attorney general shall conduct such prosecution; and such company, corporation or association so failing or refusing shall be prohibited from carrying on said business in this State until such payment is made." Stats. Missouri, 1889, p. 52.

The bill, filed on the 17th of June, 1890, contained substantially the following material averments: At the date of the passage of the aforesaid act of the legislature, the complainant was, and ever since that date has been, engaged in the business of conveying valuable articles to, from and through the State of Missouri and various parts of that State, by express, at the same time providing its own transportation, under contracts with the Missouri Pacific and other railroad companies operating lines in that State, to convey the property bailed to it. In the prosecution of such business, complainant, under contracts of hire, receives and has received, property at various points in other States and conveys it to various places in Mis-

souri, and also property in Missouri which it conveys to points in other States. At the time and during the period mentioned there were other persons and corporations engaged in a like business in the State of Missouri, who either owned their own transportation facilities or procured the same by hire from persons not a railroad or steamboat company, or any one connected with such corporations.

The bill then averred that if the act of the legislature aforesaid was a valid law, complainant would be required to pay taxes to the State for the year ending April 1, 1890, in the estimated sum of over $12,000, and if the act was a valid law only in respect to the gross receipts upon such business as complainant had done between points wholly in the State of Missouri, and void as to gross receipts upon its business done between points within the State and points in other States, then complainant would be required to pay taxes for such period in the sum of over $3000; that complainant was willing to pay any taxes which might be found to have been legally assessed against it, but it declared that the aforesaid act of the Missouri legislature was not a valid law, because it sought to impose a tax upon the business of interstate commerce in which complainant was engaged, and was, therefore, violative of the Constitution of the United States.

The bill then averred that neither the tax of two per cent mentioned in section 2 of the act of the legislature, nor any other equivalent tax was imposed by that act or any other law of the State, upon other common carriers engaged in similar business as complainant, who do not hire transportation by "contract with any railroad or steamboat company," etc.; that there was no provision in that act in respect to the equalization of the taxes required to be levied under it, by state and county boards of equalization, as in the case of other state taxes, and the tax assessed under said act was not uniform; and it was claimed, therefore, that the act was violative of the Fourteenth Amendment of the Constitution of the United States because it denied to the complainant the equal protection of the laws, and was also violative of § 3, art. 10, of the constitution of Missouri, because the taxes levied were not " uniform upon the

same class of subjects within the territorial limits of the authority levying the tax."

The bill also averred that the act under consideration was violative of certain other mentioned provisions of the constitution of Missouri; and that the defendants, being the officials charged with the duty of enforcing the provisions thereof, would proceed to enforce the same, unless restrained by the order or process of the court, by instituting legal proceedings to collect said taxes and the penalties prescribed, and would thereby prohibit complainant from carrying on its business in Missouri, whereby complainant would be subjected to and harassed by a multiplicity of suits, and would suffer great and irreparable loss and damage, for which it had no adequate remedy at law.

Wherefore an injunction was prayed to restrain the collection of said taxes, and a decree was asked adjudging the aforesaid act of the legislature of Missouri invalid and unconstitutional, together with a prayer for such other and further relief as might appear equitable and just.

Upon the filing of the bill and upon hearing argument of counsel for both sides of the controversy, the court, on the 23d of June, 1890, granted a temporary injunction, as prayed.

The defendants then demurred to the bill, upon three grounds: (1) that it did not state facts sufficient to entitle complainant to the relief prayed; (2) that there was no equity in it; and, (3) that it appeared from the bill that complainant had an adequate remedy at law. The demurrer was sustained, and a decree was entered dissolving the temporary injunction and dismissing the bill for want of equity. 44 Fed. Rep. 310. From that decree the complainant appealed, and the case is now here for consideration.

*Mr. Westel W. Morsman* for appellant.

I. The State does not permit itself to be sued, and the act requires the tax to be paid to the state treasurer, under penalties for failure to do so, grossly disproportioned to the injuries the State would suffer by delay. It is evident that

the State intended to coerce submission. Under these circum-stances the only complete remedy is in equity. It is not nec-essary, in order to sustain the remedy in equity, to show there is *no* remedy at law. It is sufficient if the remedy at law be substantially *less adequate* than in equity. *Kilbourn* v. *Sun-derland*, 130 U. S. 505; *Sullivan* v. *Portland & Kennebec Railroad*, 94 U. S. 806; *Wylie* v. *Coxe*, 14 How. 1; *Boyce* v. *Grundy*, 3 Pet. 210; *Osborn* v. *Bank of the United States*, 9 Wheat. 738, 839; *Allen* v. *Balt. & Ohio Railroad*, 114 U. S. 311; *Cummings* v. *National Bank*, 101 U. S. 153; *Poin-dexter* v. *Greenhow*, 114 U. S. 270; *Evansville Bank* v. *Brit-ton*, 105 U. S. 322; *Hills* v. *Exchange Bank*, 105 U. S. 319; *Boyer* v. *Boyer*, 113 U. S. 689; *Pennoyer* v. *McConnaughy*, 140 U. S. 1.

II. By the terms of the act it applies to gross receipts from transportation "to, from or through this State, or any part thereof;" to the "entire receipts from business done within this State;" and to the "proportion of gross receipts for *business* done by such company in connection with other companies." Whether these words embrace interstate traffic is the decisive question. *State Freight Tax Case*, 15 Wall. 232.

"Business" is a broad, generic term. It embraces, in this connection, every transaction, every service performed within the State, from which receipts are derived. It is as easily and as rationally applied to that portion of interstate trans-portation which is within the State, as to transportation which originates and terminates within it. Each is, equally, "business" done within the State. Interstate commerce may not, correctly speaking, be "business done within the State." But the latter is always included in the former. "Business" done within the State may be, and often is, interstate com-merce, because of its being an essential part of transportation which originates or terminates beyond the lines of the State. Reading the words "business done within the State," in con-nection with the words "to, from or through the State, or any part thereof," as used in the first section, there seems to be no reason to doubt that it was the intention of the legisla-

ture to include that portion of transportation which should be performed within the State, notwithstanding it may have originated or terminated beyond the lines of the State. In embracing carriers engaged in carrying "to" the State, the legislature had in mind those carriers who take goods at points in other States and deliver them within the State. It used the word "to" in the sense of "into," which is not very uncommon.

Articles taken up in another State to be delivered within the State of Missouri, or to be carried through and across the State, or taken up within the State to be carried out and delivered at points in other States, would, so far as the carriage within the State of Missouri is concerned, be "business done within the State," by any rule of interpretation that does not ignore the plain and obvious meaning of the words of the act. A court should, if it consistently can, so interpret an act of a legislature as to save it from objection on constitutional grounds. But it cannot ignore the words of the act, or their clear and ordinary meaning, upon an assumption that the legislature understood the situation, and would not knowingly exceed its powers.

In *Philadelphia &c. Steamship Co.* v. *Pennsylvania*, 122 U. S. 326, this court would hardly have gone into the constitutional question, if the case could have been correctly decided by simply holding that the words " doing business within the State," " *ex vi termini*, import business begun and ended within the State, and include only intra-state and not inter-state commerce;" and in *Fargo* v. *Michigan*, 121 U. S. 230, the State sought to impose a tax upon gross receipts " for freight earned within the State." These words are not materially different in meaning or scope from the words of the act in question in the case at bar. But this court decided the case upon constitutional grounds, not intimating that the act did not apply to interstate commerce.

III. This statute violates that provision in the Fourteenth Amendment which prohibits any State from denying to any person within its jurisdiction, the equal protection of its laws; and is in violation of that provision of the constitution of the

State, which requires all taxation to be uniform in respect to the subjects upon which it is levied, within the district levying the tax. The provision of the Fourteenth Amendment to the Constitution of the United States, and the provision referred to in the constitution of the State, are equally provisions requiring equal and uniform laws, so far as they relate to the subject in controversy in this suit. There is no difference in principle, between these provisions; but the object of the provision of the Constitution of the United States, was to take the subject of equal legislation under the protection of the national constitution. As applied to the subject of taxation, it requires that all taxation shall be equal and uniform, in respect to all persons and corporations within the jurisdiction of the State, under like circumstances and conditions. *Barbier* v. *Connolly*, 113 U. S. 27; *Missouri Pacific Railway* v. *Humes*, 115 U. S. 512; *Dent* v. *West Virginia*, 129 U. S. 114; *Missouri Pacific Railway* v. *Mackey*, 127 U. S. 205; *Home Insurance. Co.* v. *New York*, 134 U. S. 594; *Yick Wo* v. *Hopkins*, 118 U. S. 356.

The provision of the constitution in question has received legislative interpretation. By Rev. Stat. § 1977, it is enacted, for the purpose of enforcing the provisions of the constitutional amendment, that all persons within the jurisdiction of the United States shall have the same right in every State and Territory, and be "subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other." In order to determine whether or not the act of the legislature is uniform and equal, as required by the constitutional provisions referred to, it is necessary to ascertain the sphere of operation of the act. If, within this sphere of operation, it affects all persons equally and uniformly under like circumstances and conditions, it is not obnoxious to the provision of either constitution. But, on the other hand, if it create a burden upon some persons and not upon others, under the same circumstances and conditions, it is then an obvious violation of these constitutional provisions.

The legislature, in defining what should constitute an express company for the purposes of the act, evidently intended to

exclude all express companies or persons doing the business described in the act, who own their own lines of transportation or procure transportation facilities by contract with some other person or corporation than a railroad or steamboat company. Yet it is obvious that a railroad company doing the character of business specified in the section defining an express company, over its own line of railroad, would still be an express company with respect to that particular business, notwithstanding any effort of the legislature to exclude it by definition. The legislature can no more say that a railroad company, prosecuting the business referred to in this act, is not, in fact, an express company, than it can say that a black man carrying on the dry goods business is not a dry goods merchant equally with a white man prosecuting the same business. The mere fact that one corporation or person denominates itself an express company, while the other denominates itself a railroad company, affords no distinction that will justify the legislature in saying that one is an express company and the other is not, when it proposes to levy a tax upon the pursuit or occupation in which each are alike engaged. The " business " is precisely the same in both cases. Both parties are engaged in the same occupation, and no definition can change it. It is the occupation or business which the legislature proposes to tax. It cannot make a discrimination not based upon any intrinsic difference in the occupation, but resting solely upon the mere difference of name in the parties pursuing it, without raising a discrimination prohibited by each of the constitutional provisions referred to.

I do not deny that the legislature may classify subjects for the purposes of taxation, but it cannot do so, arbitrarily, by legislation having no reference to an intrinsic difference of circumstances and conditions. It cannot, arbitrarily, divide those engaged, or who may engage, in the same business, into different classes, imposing burdens upon one and exempting another. This is not classification at all, but a mere division of the same class, or subject of taxation. It is discrimination, pure and simple. See *Kentucky Railroad Tax Cases*, 115 U. S. 321; *State* v. *Readington Township*, 36 N. J. Law (7 Vroom)

66; *Lexington* v. *McQuinlan*, 9 Dana, 513; *S. C.* 35 Am. Dec. 159; *Field* v. *Highland County*, 36 Ohio St. 476; *St. Louis* v. *Bowler*, 94 Missouri, 630; *St. Louis* v. *Spiegels*, 75 Missouri, 145; *People* v. *Weaver*, 100 U. S. 539; *Evansville Bank* v. *Britton*, 105 U. S. 322; *San Mateo County* v. *Southern Pacific Railroad*, 8 Sawyer, 238; *Santa Clara County* v. *Southern Pacific Railroad*, 9 Sawyer, 165; *Pullman Palace Car Co.* v. *Texas*, 64 Texas, 274; *People* v. *Central Pacific Railroad*, 83 California, 393.

*Mr. John M. Wood,* Attorney General of the State of Missouri, for appellees.

MR. JUSTICE LAMAR delivered the opinion of the court.

According to the view we take of the case, it is not necessary to inquire into the special equities set forth in the bill and relied upon in the argument for complainant to show that this record presents a case for the interposition of a federal court, for the purpose of restraining the assessment or collection of a state tax. The primary and fundamental ground on which the maintenance of such a suit rests is the unlawfulness of the tax against which relief is sought, or, in other words, the invalidity or unconstitutionality of the legislative act under the authority of which the tax is imposed. It is true that this ground is not in itself sufficient. But when the illegality of the tax or the invalidity or unconstitutionality of the legislative act under which it is imposed is established, it becomes necessary to go further, and make out a case that can be brought under some recognized head of equity jurisdiction: such as, that the collection of the tax sought to be restrained may entail a multiplicity of suits; or cause some other irreparable injury, as, for instance, the ruin of complainant's business; or, where the property is real estate, throw a cloud upon the title of the complainant. *Shelton* v. *Platt*, 139 U. S. 591, 594; *Allen* v. *Pullman's Palace Car Co.*, 139 U. S. 658, 661.

It is contended in behalf of the complainant (1) that the statute of Missouri, under the provisions of which the tax sought to be restrained is levied, imposes a tax upon interstate

commerce, and to that extent is forbidden by the Constitution of the United States, and is, therefore, void; (2) that the act denies to the complainant the equal protection of the laws of the State of Missouri, and is, therefore, void by reason of its being violative of the fourteenth amendment of the Constitution of the United States; and, (3) that the act is not uniform and equal in its operation, and is void by reason of its repugnance to section three of article ten of the constitution of the State of Missouri.

We do not think that these propositions, taken in connection with the averments of the bill, present any ground justifying the interposition of a court of equity to enjoin the collection of the tax imposed by the statute in question. The first proposition, that the statute imposes a tax upon interstate commerce, and is, therefore, violative of what is known as the commercial clause of the constitution, is unsound. It is well settled that a State cannot lay a tax upon interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or the receipts derived from that transportation, or on the occupation or business of carrying it on; for the reason that such taxation is a burden on that commerce and amounts to a regulation of it which belongs to Congress. *Lyng* v. *Michigan,* 135 U. S. 161; *Leloup* v. *Port of Mobile,* 127 U. S. 640; *Western Union Tel. Co.* v. *Alabama,* 132 U. S. 472; *McCall* v. *California,* 136 U. S. 104; *Norfolk & Western Railroad* v. *Pennsylvania,* 136 U. S. 114. The question on this branch of the case, therefore, is, — Was the business of this express company in the State of Missouri, on the receipts from which the tax in question was assessed under this act, interstate commerce? The allegation of the bill is very positive that in the prosecution of its business as an express company the complainant is engaged, in part, in the transportation of goods and other property between the States of Nebraska, Kansas, Texas and other States of the Union and the State of Missouri; and also in the business of carrying goods between different points within the limits of the State of Missouri. The question on this point, therefore, is narrowed down to the single inquiry, whether the tax com-

plained of in any way bears upon or touches the interstate traffic of the company, or whether, on the other hand, it is confined to its *intra*-state business. We think a proper construction of the statute confines the tax which it creates to the *intra*-state business, and in no way relates to the interstate business of the company. The act in question, after defining in its first section what shall constitute an express company or what shall be deemed to be such in the sense of the act, requires such express company to file with the state auditor an annual report "showing the entire receipts for business done *within this State* of each agent of such company doing business *in this State*," etc., and further provides that the amount which any express company pays "to the railroads or steamboats *within this State* for the transportation of their freight *within this State*" may be deducted from the gross receipts of the company on such business; and the act also requires the company making a statement of its receipts to include, as such, all sums earned or charged "for the business done *within this State*," etc. It is manifest that these provisions of the statute, so far from imposing a tax upon the receipts derived from the transportation of goods between other States and the State of Missouri, expressly limit the tax to receipts for the sums earned and charged for the *business done within the State*. This positive and oft-repeated limitation to business done within the State, that is, business begun and ended within the State, evidently intended to exclude, and the language employed certainly does exclude, the idea that the tax is to be imposed upon the interstate business of the company. "Business done within this State" cannot be made to mean business done between that State and other States. We, therefore, concur in the view of the court below that it was not the legislative intention, in the enactment of this statute, to impinge upon interstate commerce, or to interfere with it in any way whatever; and that the statute, when fairly construed, does not in any manner interfere with interstate commerce.

The second and third propositions stated above are reducible to the single contention, that the act in question violates the requirements of uniformity and equality of taxation prescribed

by the constitution of Missouri, and thereby denies to the complainant the equal protection of the laws of the State which the Fourteenth Amendment to the constitution guarantees shall not be abridged by state action.

This court has repeatedly laid down the doctrine that diversity of taxation, both with respect to the amount imposed and the various species of property selected either for bearing its burdens or for being exempt from them, is not inconsistent with a perfect uniformity and equality of taxation in the proper sense of those terms; and that a system which imposes the same tax upon every species of property, irrespective of its nature or condition or class, will be destructive of the principle of uniformity and equality in taxation and of a just adaptation of property to its burdens.

The rules of taxation, in this respect, were well stated in the opinion of the court, delivered by Mr. Justice Bradley, in *Bell's Gap Railroad* v. *Pennsylvania*, 134 U. S. 232, 237, as follows: "The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money : it may allow deductions for indebtedness, or not allow them. . . . It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject, that would include all cases. They must be decided as they arise. We think that we are safe in saying, that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions and laws of some of the States, whose object is to secure equality of taxation,

and which are usually accompanied with qualifications deemed material; but it would render nugatory those discriminations which the best interests of society require; which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice; and which every State, in one form or another, deems it expedient to adopt."

In *Home Ins. Co.* v. *New York*, 134 U. S. 594, 606, 607, the court, speaking through Mr. Justice Field, said : " But the Amendment [the Fourteenth] does not prevent the classification of property for taxation — subjecting one kind of property to one rate of taxation, and another kind of property to a different rate — distinguishing between franchises, licenses and privileges, and visible and tangible property, and between real and personal property. Nor does the amendment prohibit special legislation. Indeed, the greater part of all legislation is special, either in the extent to which it operates, or the objects sought to be obtained by it. And when such legislation applies to artificial bodies, it is not open to objection if all such bodies are treated alike under similar circumstances and conditions, in respect to the privileges conferred upon them and the liabilities to which they are subjected. Under the statute of New York all corporations, joint stock companies and associations of the same kind are subjected to the same tax. There is the same rule applicable to all, under the same conditions, in determining the rate of taxation. There is no discrimination in favor of one against another of the same class; " citing a long list of authorities.

The contention of the complainant, however, in this connection is, that the rule of uniformity and equality of taxation is destroyed by the arbitrary discrimination involved in the definition of what shall be taxed under the act, imposing upon certain persons or associations taxes from which other persons or companies of precisely the same kind, doing exactly the same kind of business, under exactly the same conditions, are exempt. In other words, the contention is, that the act of the legislature arbitrarily defines what shall constitute an express company, and then lays a tax upon its business, while at the same

time it permits the same kind of business to be done by any person or company not embraced within the class thus defined, without being subject to any tax at all. It is said that the act, by the very terms of its definition, restricts the tax to persons or corporations who carry on the business of transportation *on contracts for hire with railroad or steamboat companies* doing business within the State; and that it permits any person or company that may be so fortunate as to own its own means of transportation to go free from any such tax. That is to say, an express company that engages for hire a railroad or steamboat company to transport its merchandise must pay a tax for the privilege of doing business, while the railroad or steamboat company owning its own means of transportation might, in connection with the business for which it was primarily chartered, engage in the express business without paying any tax whatever on the privilege of carrying on such express business. It is strenuously argued, therefore, that this is an unjust discrimination against the express companies defined by the act, and in favor of other companies or persons that may, in connection with their primary or original business, engage in the express business, or that may carry on a separate express business, owning their own means of transportation.

The fallacy of this argument lies in the assumption that the definition of what shall constitute an express company excludes from the classification companies which are as much engaged in the business, or as much under the same conditions, as are those which, under the definition, are subject to the tax.

The legislation in question cannot be considered as invidiously discriminating against the express companies defined by it and in favor of other companies or persons that may carry express matter on certain other conditions or under different circumstances. There is an essential difference between express companies defined by this act and railroad or steamboat companies or other companies that own their own means of transportation. The vital distinction is this: Railroad companies pay taxes on their road-beds, rolling stock and other

tangible property as well as, generally, upon their franchise; and steamboat companies likewise pay a tax upon their tangible property. This tax is not necessarily an *ad valorem* tax at the same rate as is paid on other private property in the State belonging to individuals. Generally, indeed, it is not, but is often determined by other means and at different rates, according to the will of the state legislature. *Kentucky Railroad Tax Cases,* 115 U. S. 321, 337. On the other hand, express companies, such as are defined by this act, have no tangible property, of any consequence, subject to taxation under the general laws. There is, therefore, no way by which they can be taxed at all unless by a tax upon their receipts for business transacted. This distinction clearly places express companies defined by this act in a separate class from companies owning their own means of transportation. They do not do business under the same conditions, or under similar circumstances. In the nature of things, and irrespective of the definitive legislation in question, they belong to different classes. There can be no objection, therefore, to the discrimination made as between express companies defined by this act and other companies or persons incidentally doing a similar business by different means and methods, in the manner in which they are taxed. Their different nature, character and means of doing business justify the discrimination in this respect which the legislature has seen fit to impose. The legislation in question does not discriminate between companies brought within the class defined in the first section; and such companies being so entirely dissimilar, in vital respects, as regards the purposes and policy of taxation, from railroad companies and the like owning a large amount of tangible and other property subject to taxation under other and different laws, and upon other and different principles, we do not see how, under the principles of the many decisions of this court upon the subject, it can be held violative either of the Fourteenth Amendment of the Constitution of the United States, or of the provision in the constitution of Missouri, relating to equality and uniformity of taxation. See *Barbier* v. *Connolly,* 113 U. S. 27; *Soon Hing* v. *Crowley,* 113 U. S. 703; *Dent* v. *West Virginia,* 129 U. S.

114; *Missouri Pacific Railway* v. *Humes*, 115 U. S. 512; *St. Louis* v. *Weber*, 44 Missouri, 547; *Germania Life Ins. Co.* v. *Commonwealth*, 85 Penn. St. 513; *Missouri* v. *Welton*, 55 Missouri, 288.

The opinion of the court below on this branch of the case is elaborately argued, and is conclusive. We concur in the reasoning of it as well as in the language employed, and refer to it as a correct expression of the law upon the subject.

*Decree affirmed.*