6702

AETNA FIRE INS. CO. v. JONES, COMPTROLLER.

CONSTITUTIONAL LAW—POLICE POWER—TAXATION.—The act, 25 stat., 619, providing for collecting from the fire insurance companies doing business in the incorporated cities and towns of this State a tax of two dollars on every one hundred dollars in premiums collected by them annually in such municipality and paying the fund to certain firemen's associations, for benefits, gratuities and pensions, is unconstitutional, in that it is not a uniform tax, it is not levied for a public purpose, and it violates art. III, sec. 32 of the Constitution prohibiting granting pensions except for military and naval service. Nor can it be sustained on the ground that the Legislature has the authority to pass it under the police power of the State.

Petition by &AElig;tna Fire Insurance Co.; Hamburg-Bremen Fire Ins. Co.; Home Ins. Co.; Hartford Fire Ins. Co.; Royal Fire Ins. Co.; North Carolina Home Ins. Co.; Williamsburg City Fire Ins. Co.; Globe Rutgers Ins. Co.; Milwaukee Mechanics Ins. Co.; Providence-Washington Ins. Co. and Germania Ins. Co. for injunction against A. W. Jones as Comptroller General.

*Messrs. King, Spalding & Little, Smith, Lee & Frost,* and *Alex. C. King,* for petitioners, cite: *One or more may join in a petition of this kind for benefit of all:* 4 S. C., 513; 13 S. C., 310; 54 S. C., 448; 76 S. C., 162. *This action is properly brought against this defendant:* 20 L. R. A., 829. *Has a court of equity juridiction:* 1 Pom. Eq. Jur., 277; Code 1902, 412, 413, 414; 4 S. C., 520; 11 S. C., 311; 23 S. C., 70; 35 S. C., 213. *The act relates to more than one subject not expressed in its title:* Art. III, sec. 17, Con.; 20 L. R. A., 827; 18 S. C., 466; 132 U. S., 464; 104 Ga., 544; 99 Ga., 54; 16 S. C., 47; 14 Col., 401; 26 La. An., 142, 699; 64 Mich., 657; 89 Mich., 295; 85 Pa., 191. *Power to tax cannot be delegated:* Art. III, sec. 1; Art. I, secs. 5, 13, Con. of 1895; Art. IV, Con. of U. S.; 30 S. C., 15. *State cannot levy tax for municipal purposes:* Art. VIII, sec. 6; Art. X, sec. 5, Con. of 1895; 15 Pac. R., 380; 50 N. W. R., 771; 34 S. C., 244; 71 N. W. R., 997. *This tax is not warranted by constitution:* Art. X of Con. 1895; Code 1902, 325 to 331; 88 Am. Dec. 715; 64 N. Y., 99; 20 Wall., 663; 106 U. S., 500; 39 Pa. St., 82; 19 Fev. R., 872; 23 S. C., 62. *Tax not uniform:* 50 N. W. R., 771; 12 La. An., 802; 39 Pa. St., 73. *Act is unconstitutional because it provides for pensions:* Art. XIII, sec. 5; art. III, sec. 32; art. I, sec. 29, Con. 1895; 2 McC., 304; 75 S. C., 62; 56 L. R. A., 572; 63 L. R. A., 179; 66 S. C., 45; 45 S. W. R., 1099. *This act is not a condition upon which foreign corporations may do business in this State:* 20 L. R. A., 832; 86 Am. Dec., 236; 27 Sup. Ct. R., 285; 199 U. S., 401; 114 U. S., 270; 180 U. S., 452. *Is the act contrary to public policy?* 74

Am. Dec., 119. *The whole act is unconstitutional:* 114 U. S., 304; 100 U. S., 99; 71 N. W. R., 994. *Collection of tax under unconstitutional act may be enjoined:* 59 Ga., 807; 97 U. S., 531; 16 Ga., 102.

*Attorney-General J. Fraser Lyon* and *Messrs. Von Kolnitz & Waring* and *Mitchell & Smith,* contra, cite: *No federal question is here involved:* 177 U. S., 28; 202 U. S., 246. *Is act too broad for title:* 21 S. C., 476; 11 S. C., 309; 23 S. C., 427; 36 S. C., 135; 58 S. C., 415; 71 S. C., 487; 74 S. C., 449. *The act is not a delegation of legislative authority:* 92 N. Y., 311; 140 Ill., 653. *The act is a police provision:* 23 So., 843; 93 N. Y., 313; 51 N. Y., 949.

November 6, 1907. The opinion of this Court was delivered by

Mr. CHIEF JUSTICE POPE. This is a petition to this Court in its original juridiction whereby the plaintiff insurance companies, for themselves and others in like situation, seek to have the comptroller-general enjoined from proceeding to collect certain taxes provided for by an Act of the General Assembly approved May 9, 1906, 25 Stat., 620, on the ground that the said act is unconstitutional, null, and void. Counsel for petitioners discuss at length the preliminary question as to the jurisdiction of this Court to hear the cause, but an identical question having been passed upon in the recent case of *Ware Shoals Mfg. Co.* v. *Jones, Comptroller General, ante,* 211, we proceed at once to the merits of the case.

The title of the act is: "An act requiring the payment of certain premiums to the fire departments of incorporated cities and towns by the fire insurance companies doing business in the State, for the purpose of creating a fund for the benefit of the members of the fire departments of such cities and towns, and providing for the collection and distribution of the same."

The act is as follows: Section 1. "Be it enacted by the General Assembly of the State of South Carolina: Every fire insurance company, corporation or association doing business in any incorporated city or town of this State, having or that hereafter may have a regularly organized fire department under the control of the mayor and council, or intendant and council of said city or town, and having in serviceable condition for fire duty fire apparatus and necessary equipments belonging thereto to the value of ($1,000) one thousand dollars, and upwards, shall return to the Comptroller General a just and true account verified by oath that the same is a true account of all premiums received from fire insurance business done in such incorporated cities or towns during the year ending December the 31st, or such portion thereof as they may have transacted such business in such cities and towns. Such returns must be made by said companies, corporations or associations within sixty days after the 31st day of December of each year."

Section 2 requires such companies to pay within the said sixty days to the State Treasurer the sum of two dollars on every one hundred dollars premiums collected on fire or lightning insurance business done in said cities and towns.

Sections 3 and 4 require said insurance companies to keep accurate books of account of all business done in said cities and towns and provide a penalty for failure so to do.

Section 5 enacts that in case of failure to pay said tax or any penalty imposed, the Comptroller General shall have power to revoke any license previously issued to said companies.

Section 6. "The State Treasurer shall pay over the money collected from the insurance companies, associations or corporations doing business within the cities or towns having or that may hereafter have a regularly organized fire department as aforesaid in section 1 of this act, to the treasurer of the firemen's Relief Association to be composed of the members of the fire departments of such cities or towns, and to be incorporated under the laws of this State;

*Provided,* that all money so collected from the insurance companies, corporations or associations doing business within the cities or towns having or that may hereafter have a paid department, being such department in which the members are paid for full time or part of their time employed as firemen, and on duty at all times to respond to all duties required of them, and otherwise in accordance with the provisions of section 1 of this act, shall be paid by the State Treasurer to the treasurer of such city, and all the money so received shall be set apart and used by such cities or towns solely and entirely for the objects and purposes of this act by the Firemen's Relief Association or Board of Trustees of Firemen's Pension funds of such cities or towns under such provisions as shall be made by the mayor and council or board of trustees thereof.

Section 7. "All money collected and received under the provisions of this act shall be held in trust and used as a fund for the relief of any member of the fire department of such city or town who may be injured or disabled, and for the relief of, or the payment of gratuities to the widow or those dependent upon any member of such fire department who may be killed; for the payment of necessary funeral expenses of any member of such fire department, and for the purchase of accident insurance upon the members of such fire department; *Provided, further,* that the boards of trustees of such cities having pension funds may also use said money for pensions to superannuated and disabled firemen: *Provided,* that the fire department of such city or town should also be a member of the State Firemen's Association of this State."

The act is attacked on numerous grounds, but we think the pivotal question is, has the General Assembly power to enact such legislation. In other words, is the constitution violated in that the tax here under consideration is not uniform and for no public purpose. That the imposition is an attempted exercise of the taxing power conferred by the constitution, the respondent practically admits in that it is

29—78

sought to sustain the exaction on the ground that it is for a public purpose. "A tax," according to Webster's Dictionary, "is a rate or a sum of money assessed on the person or property of a citizen by the government for the use of the nation or state." Cooley in his Constitutional Limitations, sec. 479, says: "Taxes are burdens or charges imposed by the legislature upon persons or property to raise money for public purposes." Applying either of these rules to the legislation here in question, if it be conceded that the aid of firemen is a public purpose, it clearly falls under the head of taxation, for all of the requirements are fulfilled, namely, that it is an imposition on persons or property by the government for a public purpose. In the case of *Henderson* v. *Insurance C.* (Ind.), 20 L. R. A., 827, where a question almost identical was under consideration, it is said that the decided weight of authority holds that such impositions are attempts at taxation, and the cases of *San Francisco* v. *Ins. Co.,* 74 Cal., 113; *State* v. *Wheeler,* 33 Neb., 563; *Philadelphia Association for Relief of Disabled Firemen* v. *Wood,* 39 Pa. St., 73; *State* v. *Merchants Ins. Co.,* 12 La. An., 802, are quoted as sustaining that view.

The respondent here contends, however, that the imposition is not a tax, but is one of the conditions upon which foreign insurance companies are permitted to do business in this State. Such a contention, we think, cannot be sustained. In the first place, the act is general, applying both to domestic and foreign corporations. In the second place, the act itself does not purport to be conditional. It applies to "every fire insurance company, corporation or association doing business in incorporated cities or towns in this State." The participle "doing" is important here as throwing light on the intention of the Legislature. The word implies that the corporations are already in existence and are carrying on business. The license has already issued. True, the act does provide that under certain circumstances, the certificate shall be revoked, but we regard this as merely a means for securing the collection of the imposition and not as a con-

dition subsequent. That the Legislature might have imposed such a condition upon foreign corporations, as well as domestic corporations, it is not our duty here to decide; suffice it to say that no such condition was imposed.

Again, the respondent contends that the present enactment is a lawful exercise of the police power inherent in the State as a sovereignty, the exercise looking to the protection of the property of all the citizens of the State. Perhaps no subject is more fraught with difficulty than is the proper' limiting and defining of the police power of a sovereign State. Generally courts refuse to attempt such definition, leaving each case to be decided as it arises. In our State, however, in the comparatively recent case of *Stehmeyer* v. *City Council,* 53 S. C., 259, 282, where this power is discussed at length and numerous authorities are reviewed, the court with deference lays down the following: "The police power is that attribute of sovereignty in a State, by which it clothes the Legislature with power to regulate persons—natural and artificial—and property, in accordance with the provisions of the State Constitution, in all matters relating to the public health, the public morals, and the public safety." Again, in the case of *Beer Company* v. *Mass.,* 97 U. S., 25-33, it is said: "Whatever difference of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection, health and property of the citizens, and to the preservation of good order and the public morals."

In Volume 22, page 938, of the A. & E. Ency. of Law the following proposition sustained by much authority is laid down: "In order that a statute or ordinance may be sustained as an exercise of the police power, the courts must be able to see (1) that the enactment has for its object the prevention of some offense or manifest evil, or the preservation of the public health, safety, morals, or general welfare; and (2) that there is some clear, real substantial connection

between the assumed purpose of the enactment and the actual provisions thereof, and that the latter do in some plain, appreciable, and appropriate manner tend towards the accomplishment of the object for which the power is exercised. The police power cannot be used as a cloak for the invasion of personal rights or private property, neither can it be exercised for private purposes, or for the exclusive benefit of particular individuals or classes." In other words, the exercise must have in view the good of the citizens of the sovereignty as a whole.

This brings us then to the question as to whether or not the legislation here under consideration has in view a public purpose. The money secured from the imposition on the insurance companies is to "be held in trust and used as a fund for the relief of any member of the fire department of such city or town who may be injured or disabled, and for the relief of, or the payment of gratuities, to the widow or those dependent upon any member of such fire department who may be killed, for the payment of necessary funeral expenses of any member of such fire department and for the purchase of accident insurance upon the members of such fire departments" and in certain cases to be used for the payment of pensions. New York and Alabama and perhaps one or two other States, proceeding upon the theory that the prevention of conflagrations is a public duty which prior to the establishment of fire departments devolved upon the community, that in discharging these duties the firemen sustain such relation to the public as to become, in the true sense, public servants, have sustained the position that such enactments are for public purposes. *Trustees of Exempt Firemen's Benevolent Fund* v. *Roome,* 93 N. Y., 313; *Phoenix Assurance Company of London* v. *Fire Department of Montgomery,* 23 So., 843. In each of these cases, however, the legislation was sustained on the ground that it provided conditions upon which foreign insurance companies would be permitted to carry on business in the State. The above reasoning as to the publicity of the purpose of

such enactments was considered and expressly repudiated
by the Indiana Court in the case of *Henderson* v. *Ins. Co.,
supra.* A like view is maintained in *Philadelphia Associa-
tion* v. *Wood, supra,* where the Court uses this language, at
page 81: "Of course there was a good motive for this.
The relief of the disabled firemen is a purpose worthy of
society. And firemen contribute much to save insurance
companies from losses. And hence it is inferred that insur-
ance companies ought to contribute to the support of those
who have been disabled in working for their benefit. But
the same argument might be quite as effectually used as a
reason for imposing a burden in favor of this society, upon
those who obtain insurance, and much more upon those who
do not insure at all. Therefore, since the chief character-
istic of justice is its equality, the justice of this provision
is very far from being apparent. An untrained and un-
thoughtful benevolence is very apt to be unjust to those
interests which do not attract its special attention." Like-
wise in *Lousiana* v. *Merchants Ins. Co., supra,* the Court
says, at page 808: "But in the case before us there is no
property improved or assessed; all is conjectural and arbi-
trary; one class of corporations is taxed an invariable sum
for the benefit of another class; there is no possibility of
ascertaining whether the tax is a *quid pro quo;* the fire com-
panies are not compelled by the law to do anything for the
insurance companies; a bounty is secured to the fire depart-
ment by confiscating the money of the defendants, without
providing that any service shall be rendered to the defend-
ants by the fire departments; and even if this could, for a
moment, be regarded as an assessment for benefits con-
ferred, its inequality is glaring; every owner of buildings
and other combustible property in New Orleans, who is
either wholly or in part his own underwriter, is presumed
to be benefited by the fire department in the same way as the
insurance companies are. Why should the companies alone
pay for this common benefit?"

The question is exceedingly close and difficult and the authorities, as we have seen, are conflicting, but we are inclined to give adherence to the latter view. Especially where the benefits go to a Firemen's Benefit Association the public purpose seems to be lacking. Therefore, we hold that the act cannot be sustained on the ground that it is a police regulation, the important characteristic, publicity of purpose, being wanting.

It cannot be doubted that incidentally the public derives much benefit from fire departments of municipal corporations. Any organization that tends to enhance the value of property or the security of its possession, that gives work to unemployed persons in a given locality, or bridles powers hitherto unused, is certainly after a manner beneficial to the public at large. The wealth and welfare of a State lies in the well-being of its individual citizens. Thus, if a factory employing hundreds of hands and annually turning out thousands of dollars' worth of products is built or a mine which yearly puts on the market hundreds of tons of mineral is opened up, the incidental benefit to the public is great, yet the highest legal tribunal of the country has held that public funds cannot be appropriated for such a purpose. *Loan Association* v. *Topeka,* 20 Wallace, 663. A fire department is a municipal institution. Its organization and control is purely a matter of municipal concern. True, interest in the establishment of such agencies would extend further than the municipal boundaries, but whether that interest could be manifested in action on the part of the General Assembly, otherwise than to encourage, seems a matter of doubt, the spirit of our law being that the Legislature may invest municipal governments with power, leaving the exercise of it to their discretion and corporate needs.

In the present case the Legislature has gone further than attempting to raise money for fire departments, municipal organizations, in that it seeks to raise a fund by taxation for what seems to us merely a benevolent purpose. The

money collected under the act of 1906 is not for the use of
the fire department but is to be paid to certain firemen's
associations for benefits, gratuities and pensions. These
associations are incorporated under the law and their sole
purpose is to take charge of the funds collected and dis-
burse them in the manner provided for by the act. As was
said in the cases above quoted from, such a purpose is cer-
tainly a worthy one. And it no doubt would be a source of
much comfort to the members of the various departments'
and would have tendency to allure men to the vocation, but
can this effect justify the seemingly arbitrary appropriation
of the income of the insurance companies?

It is argued that the fire company by its work saves the
insurance company from loss, and therefore the insurance
company should compensate them. Let us see what this
argument would lead to. It is well known that all insurance
companies regulate their rate by the risk and expense rela-
tive to the insurance of a certain piece of property. There-
fore the only reasonable view is that the insurance com-
panies would in the end make the insured pay the gratuities
to the associations. It is likewise well known that in all
cities and towns there are numerous persons who do not
carry insurance. Now it cannot be denied that such per-
sons are even more benefited by the fire departments than
those who carry insurance, for their entire risk is entrusted
to the efficiency of such departments. Under the enactment
being considered the class of citizens who carry insurance
must pay the whole of the imposition while the latter get the
benefits and have no burden to bear. On this reasoning the
tax is not uniform.

That the fireman's work is a meritorious one and that he
deserves the highest regard of the community for the faith-
ful performance of his duties are facts that cannot be con-
troverted. Yet his work is not altogether gratuitous. More
and more is it the present day tendency to establish paid
departments. In these the members are paid for their
services. In the volunteer departments, too, the members

are usually compensated in one way or another. There is also the fact that where it is made a permanent vocation, as is usually the case in the paid departments, the individual assumes the responsibility of his own free will. That it is fraught with danger no one will deny, but it is not necessarily more dangerous than other callings in which numbers of men are employed daily. Can the engineer of a locomotive dashing across the country at the rate of from fifty to ninety miles an hour or the miner working hundreds of feet below the surface of the earth be said to be more secure than the fireman who answers the alarm bell? Can one be said to render a greater service to humanity than the other? We think not. Nor can it be said that the fireman's duty is more public than that of the engineer. There are numerous callings in a sense *quasi* public, but not of such nature as to justify the State in granting gratuities or pensions on the ground that the services are public.

Any speculation as to this subject, however, is estopped by the constitutional inhibition, Art. III, sec. 32, which provides: "The General Assembly * * * shall not grant pensions except for military and naval service." A pension has been defined to be an annuity from the government for services rendered in the past. That the pensions provided for by the act of 1906 fall within this rule is evident. The money is to be obtained by a governmental enactment and is to be paid to superannuated or disabled firemen who in time past had been in active service.

We do not deem it necessary to continue the discussion further. In our opinion the act is clearly unconstitutional.

Therefore it is the judgment of this Court, that the petition be granted and the prohibition issue as prayed for.

MESSRS. JUSTICE JONES and WOODS *concur on the ground that the statute violates Art. III, sec. 32 of the Constitution.*