## 18956

UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant, v. CITY OF NEWBERRY and Ted E. Smith as Finance Director of said City, Respondents.

(169 S. E. (2d) 599)

198

*Bernard Manning, Esq.,* of Columbia, *for Appellant,*

*Messrs. R. Aubrey Harley* and *James N. Parr,* of New-berry, *for Respondents,*

*Roy D. Bates, Esq.,* of Columbia, *for the city of Columbia as Amicus Curiae,*

August 27, 1969.

LITTLEJOHN, Justice.

This is an action brought by the plaintiff insurance company to recover an amount paid under protest as a business license tax for 1967 to the City of Newberry.

The City of Newberry enacted an ordinance in 1966 known as the City of Newberry Business and Professional License Ordinance, 1967 Edition. Under this ordinance enterprises doing business in the city were required to obtain and pay for a license, which license, in all cases (except that of manufacturing concerns) would be issued upon payment of a tax based on 1966 gross receipts earned from doing business in the City of Newberry.

The plaintiff paid the required amount under protest and brought this action for its recovery. The facts were not in dispute, so the cause was heard upon stipulations, together with oral arguments and briefs.

The sole question submitted in this appeal as taken from appellant's brief is phrased as follows:

"Was the tax required of appellant by respondent city unjust, unreasonable, confiscatory, or excessive?"

The lower court found for the city and held that the insurance company was not entitled to recovery of the tax.

The parties hereto stipulated a comparison of license fees paid to the City of Newberry in 1967 by different types of businesses, and this is as follows:

"

|  | 1966 Gross Receipts | 1967 License Amount | License Tax Rate (Per Cent) |
|---|---|---|---|
| Category |  |  |  |
| Automobiles, New & Secondhand Cars and Trucks: | $ 707,657.23 | $ 696.00 | 0.09835 * |
| Building Supplies: |  |  |  |
| Retail | 170,000.00 | 190.00 | 0.11176 |
| Wholesale | 983,000.00 | 516.00 | 0.05249 |
| Butcher Shops or Meat Markets: | 215,000.00 | 240.00 | 0.11163 |
| Concrete Plant: | 242,176.46 | 288.00 | 0.11892 |
| Creameries: | 223,000.00 | 126.50 | 0.05673 |
| General Contractor: | 422,077.65 | 372.08 | 0.08815 |
| Electrical Power Company: | 509,349.00 | 660.00 | 0.12957 |
| Fertilizer Dealers: | 157,800.00 | 187.80 | 0.11901 |
| Filling Stations: | 93,484.27 | 98.00 | 0.10483 * 2. |
| Fruit Dealers: Selling from Warehouse or Storeroom | 146,252.75 | 88.50 | 0.06512 |
| Gas Companies, Bottled: | 161,689.22 | 227.00 | 0.14040 |

" * The 1966 gross receipts of the business used in this category amounted to a total $922,524.30; however, businesses in this category are allowed to deduct for trade-ins and unreimbursed warranty payments before computing their 1967 licenses. The amount required for a license for this business, $696, is 0.07544% of its total 1966 gross receipts.

" * 2. The 1966 gross receipts of the business used in this category amounted to a total of $130,333; however, businesses in this category are allowed to deduct federal and state taxes of 11 cents per gallon before computing their 1967 licenses. The amount required for a license for this business, $98, is 0.07519% of its total 1966 gross receipts.

| | 1966 Gross Receipts | 1967 License Amount | License Tax Rate (Per Cent) |
|---|---|---|---|
| Insurance: Fire & Casualty. | 237,147.00 | 4,742.94 | 2.00000 * [3]. |
| Kerosene, Gasoline, Oil, Etc.: | 315,324.47 | 248.00 | 0.06980 * [4]. |
| Loans, Small: | 116,403.16 | 202.00 | 0.17353 |
| Mail Order Houses: | 223,543.00 | 258.54 | 0.11541 |
| Merchants, Retail: | 817,946.00 | 859.00 | 0.10502 |
| Merchants, Wholesale: | 2,395,642.92 | 909.00 | 0.03794 |
| Newspapers & Job Printing, Weekly & Semi-Weekly: | 167,724.21 | 227.22 | 0.13547 |
| Pulpwood Dealers: | 4,060,962.31 | 501.00 | 0.01233 |
| Telephone Company: | 392,311.80 | 568.00 | 0.14478 |

Each entry indicates one enterprise in each of the respective categories.

Other relevant stipulations were "that expected 1967 license tax revenues would total $63,000," that the "city had received through August 31, 1967, taxes for 1967 business licenses totalling $68,975;" that the plaintiff paid $472.94 based on two per cent of gross receipts totalling $237,147;

"* 3. The figures used apply to plaintiff's total fire and casualty insurance business. A life, health, accident, or hospital insurance company having 1966 gross receipts of $237,147 would have to pay only $761, or a tax rate of 0.3209, for a 1967 business license. Available figures show that the insurance industry companies for all lines, life, fire, etc., had a total 1966 gross receipts (unaudited) of $1,434,912.12, and paid sums totalling $21,304.55, or an average rate of 1.4847%, for 1967 licenses.

"* 4. The 1966 gross receipts of the business used in this category amounted to a total $497,149.45; however, businesses in this categoy are allowed to deduct federal and state taxes of 11 cents per gallon before computing their 1967 licenses. The amount required for a license for this business, $248, is 0.04988%of its total 1966 gross receipts."

and that the fifty-ninth annual report of the insurance department of South Carolina for the year ending June 30, 1966 contains a summary indicating that casualty and allied insurers doing business in South Carolina, including the plaintiff, showed no profit and in fact lost money.

The South Carolina Constitution in Art. 8, § 6 states, in part, that

"[t]he corporate authorities of cities and towns in this State shall be vested with power to assess and collect taxes for corporate purposes * * *. License or privilege taxes imposed shall be graduated so as to secure a *just imposition* of such tax upon the classes subject thereto." (Emphasis added).

This section has been held not to directly grant municipalities the power to tax, but, instead, is a direction to the General Assembly to empower municipalities to enact tax ordinances. *City of Columbia v. Putnam,* 241 S. C. 195, 127 S. E. (2d) 631 (1962); *Great Atlantic & Pacific Tea Co. v. City of Spartanburg,* 170 S. C. 262, 170 S. E. 273 (1933). Pursuant to this constitutional provision the General Assembly enacted Section 47-271 of the South Carolina Code, which gives municipalities with a population less than 70,000 and more than 1,000, including Newberry, the power to require a business license tax. The pertinent parts of the statute are as follows:

"Any such city or town council may annually require by ordinance the payment of such reasonable sum of money as a license by any person engaged or intending to engage in any business, occupation or profession, * * *. Any such license shall be graduated according to the gross income of the person required to pay it * * *."

This is consistent with Article 8, Sec. 3 of the constitution which provides:

"The General Assembly shall restrict the powers of cities and towns to levy taxes and assessments, * * *."

Taking the constitution and the statute together it is seen that the tax must be "reasonable."

It must first be noted that there is no doubt but that the rates charged specified classes my be different. *City of Columbia v. Putnam, supra,* and cases cited therein. If different rates are to be charged for different classifications it necessarily follows that city council must use its judgment and set the different rates to be collected. In deciding whether the tax is reasonable it has been held that the reasonableness is largely within the discretion of the city council. *Great Atlantic & Pacific Tea Co. v. City of Spartanburg, supra; Hill v. City Council of Abbeville,* 59 S. C. 396, 38 S. E. 11 (1901).

In this appeal the insurance company attacks the ordinance with two arguments. First, it is contended that a comparison in and of itself shows that the license tax charged fire and casualty insurance companies is unreasonable. Though it is argued that the license tax is unreasonable per se, the complaint does not so allege. The trial judge in his order did not consider whether the tax was unreasonable per se and no exception is taken in his having so failed to treat the issue. Apparently this position is first taken in appellant's brief. The issue is therefore not before this court; however, we have, through grace, considered that argument and conclude that we cannot say that the comparisons prove plaintiff's case per se. The fact that plaintiff's rate is several times that of business in other classifications does not entitled it to relief. We held in *City of Columbia v. Putnam, supra,*

"The fact that one class may pay more proportionately than other classes does not, of itself, make the license fee unreasonable or arbitrary since this is largely within the discretion of City Council. *Great Atlantic & Pacific Tea Co. v. City of Spartanburg,* 170 S. C. 262, 170 S. E. 273."

One can only speculate on the question of reasonableness by comparison. Reasonableness must be determined by the factual situation involved. It will be assumed, the contrary not being shown, that city council had before it all facts relative to each classification, includ-

ing problems and municipal expenses brought about by the businesses in the various classifications.

The allegations of the complaint are not admitted in the answer and we find no facts stipulated which warrant the conclusion that the license tax is unreasonable.

"In the absence of positive evidence to the contrary, acts or ordinances licensing or taxing an occupation or privilege are presumed to be reasonable, and the courts will not interfere unless their unreasonableness and oppressiveness is clearly apparent, the burden of proving their unreasonableness or invalidity being on the one who asserts it, usually the licensee." 53 C. J. S. Licenses § 16, p. 511 (1948).

Secondly, appellant argues that the license tax is unreasonable because it is losing money as a property insurer. We doubt that profits and losses are a proper consideration in determining reasonable amounts to be charged for licenses. This is especially true when the taxpayer, as here, is regulated as to rates by a governmental agency and may procure an increase in rates upon a proper showing. The profit or loss approach would appear to present a hopeless situation because one taxpayer within a classification might be making a profit while another might be losing money. Many things bring about a loss or a profit and neither city council nor this court should be called upon to determine whether a loss is caused by poor business management or payment of a license tax or some other cause.

We conclude, as did the circuit judge, that the plaintiff has not met the burden of proof of showing that the license tax is unreasonable and the order appealed from is

Affirmed.

Moss C. J., and LEWIS, J., concur.

BUSSEY and BRAILSFORD, JJ., concur in result.