## 19896

UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant, v. CITY OF SPARTANBURG and the Treasurer of Said City, Respondents.

(209 S. E. (2d) 36)

*Messrs. Bernard Manning* and *Thomas Kemmerlin, Jr.,* of Columbia, *for Appellant,*

*T. Emmet Walsh, Esq.,* of Spartanburg, *for Respondents,*

October 8, 1974.

BRAILSFORD, Justice:

The troublesome question on this appeal is whether the Business License Ordinance of the City of Spartanburg imposed a palpably unreasonable and irrational tax on the appellant, United States Fidelity and Guaranty Company, and others of its class, for the privilege of writing fire and casualty insurance in the City in 1971 and 1972, thus depriving appellant of equal protection of the law. In appellant's action to recover license taxes for these years paid under protest, the circuit court sustained the validity of the ordinance.

The following comparison between the tax charged fire and casualty insurers and other licensees, quoted from appellant's brief, is unchallenged and appears to be substantially correct:

"After fire and casualty insurers, the next highest taxed businesses are in three categories, No. 13, Auction Sales of Personalty; No. 55, Coupons; No. 189, Telegraph Companies that are taxed $10 per $1,000 of gross receipts, twenty categories that are taxed $5 per $1,000, thirty-seven

that are taxed $2.50 per $1,000, and, with a few exceptions, the remaining categories are taxed $1.50 or less per $1,000. Only property insurers are taxed more than $10 per $1,000 of gross receipts, and they pay $20 per $1,000 of gross receipts."

The law in this field has been recently reviewed and expounded in *United States Fidelity and Guaranty Company v. City of Newberry*, 253 S. C. 197, 169 S. E. (2d) 599 (1969), and in *United States Fidelity and Guaranty Company v. City of Newberry*, 257 S. C. 433, 186 S. E. (2d) 239 (1972), and will not be repeated here. In the former, the conclusion of the circuit court that the licensee had failed to meet the burden of providing that the license tax as to it was unreasonable was sustained. In the latter, where the record reflected a gross disparity between the amount of the tax charged fire and casualty insurers and the amounts charged businesses in other classifications,[1] summary judgment for USF&G was reversed and the case remanded for trial of "the ultimate question of whether or not the City had any constitutionally rational basis for the classification and rate here under attack." 257 S. C. at 442, 186 S. E. (2d) at 243. The clear rationale of the second *Newberry* decision is that a gross disparity between license taxes laid on different classifications of businesses is constitutionally impermissible unless a rational basis therefor exists.

While the disparity in tax charged fire and casualty insurers as compared with that charged other businesses in this case is not nearly so gross as that appearing in the second *Newberry* case, it is substantial enough to incite inquiry. The experienced and knowledgeable mayor of Spartanburg testified that city council had from time to

[1] "(T)he license tax rate charged plaintiff and other property insurers in its class is nearly seven times as great as that charged the two next highest categories, and approximately twenty or more times as much as charged all other categories or classifications." 257 S. C. at 437, 186 S. E. (2d) at 240.

time reviewed the ordinance in an effort to arrive at fair rates of taxation. In council's opinion the rate under attack is not unreasonable for two principal reasons. 1st. Fire and casualty insurers receive more benefit than other businesses from two of the City's most expensive and efficient services, fire and police protection. 2d. Such insurers pay little, if any, *ad valorem* tax and, inferentially, contribute substantially to the cost of city government only by the business license tax.

As we read the brief, appellant does not challenge the legality of the classification as being under-inclusive, *i. e.,* not including all licensees who are similarly situated. Instead, it condemns the considerations put forward by the mayor as irrelevant to the determination of a fair business license tax, hence, frivolous. *Aetna Fire Insurance Co. v. Jones,* 78 S. C. 445, 59 S. E. 148 (1907), is cited as disposing of the argument with respect to benefits received by insurers from fire protection. We do not regard the case as being in point or as having precedential value here. *Aetna* involved a statute imposing a tax on fire insurers of 2% of premiums collected in municipalities having organized fire departments, to be used for the benefit of firemen, including "pensions to superannuated and disabled firemen." Mr. Chief Justice Pope, among other reasons for holding the statute unconstitutional, rejected the argument "that the fire company by its work saves the insurance company from loss, and therefore the insurance company should compensate them," (78 S. C. at 455, 59 S. E. at 151) pointing out that the tax would be passed on to insured persons, and that uninsured property owners would get a free ride to the extent that improved fire protection resulted from the benefits conferred. However, of the four-man court, Messrs. Justice Jones and Woods limited their concurrence to the ground that the statute violated the proscription of pensions by Article III, Section 32 of the Constitution. [2]

[2] The limited concurrence of these two justices is not reflected in the South Eastern Reporter, but see 78 S. C. at 456, 59 S. E. 148.

Here, no tax was levied on appellant's class for the benefit of members of the fire and police departments or for the operation of these departments. The existence of these services and their undoubted relevance to the fire and casualty insurance business were simply considered by council in fixing the license tax rate.

Appellant insists that to relate the higher license tax to the fact that businesses of this class are not substantially subject to the City's *ad valorem* tax amounts to a penalty for not owning property in Spartanburg, which the City has no right to impose. But it seems reasonable that fire and casualty insurers, who annually collect millions of dollars in premiums from the inhabitants of a city, should make more than a minimal contribution to the government of the city. The case for the validity of the license tax is that the rate was fixed in the exercise of council's judgment as to a fair rate or business license tax on fire and casualty insurers. Arguably, an intelligent judgment required consideration of the fact that these businesses were substantially unaffected by the City's principal source of revenue, the *ad valorem* tax, which bore heavily on some other licensees.

We do not read the authorities cited by appellant as precluding such consideration. The Supreme Court of the United States sanctioned it in principle in *Pacific Exp. Co. v. Seibert,* 142 U. S. 339, 12 S. Ct. 250, 35 L. Ed. 1035 (1892), which involved a state tax imposed on express companies transporting their goods "on contract with any railroad or steamboat company," but not on express business carried on by railroad and steamboat companies by their own means. The court held that the statute did not deny express companies, as defined, equal protection of the laws nor constitute inequality in taxation, saying: "The vital distinction is this: Railroad companies pay taxes on their road-beds, rolling stock, and other tangible property as well as, generally, upon their franchise; and steamboat companies likewise pay a tax upon their tangible property. . . .

On the other hand, express companies, such as are defined by this act, have no tangible property, of any consequence, subject to taxation under the general laws. There is therefore no way by which they can be taxed at all, unless by a tax upon their receipts for business transacted."

The record indicates that in 1972, of 2450 business licensees in Spartanburg, 183, or 7% were fire and casualty insurers. These paid $166,918.97 or about 20% of the City's total business license revenue of $819,915-.00, but only 3% of the City's total revenue of $5,035,752.60 (1971 figure, latest available). A computation based upon the 2% rate shows that appellant and its fellow insurers collected a total of $8,345,948.50 in premiums in 1972 from their Spartanburg businesses.

The license tax here imposed upon the appellant is presumed to be reasonable, and the burden of proving otherwise is upon it. Appellant asks us to hold that this burden has been met because the ordinance taxes it eight times more than it taxes the majority of other businesses, and twice as much as the next highest business, and because it has shown that no reason exists which can justify this inequality of treatment. On this record, we are not convinced that the bases advanced by the City for assessing a higher rate of business license tax against appellant are irrational, or that the resulting rate is so palpably unreasonable as to justify our interference.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.